The opinion of the court was delivered by
Breaux, J.
The defendant company is appellant from a judgment obtained against it by plaintiff for damages arising from an injury suffered by him, plaintiff, in a fall from one of its telephone poles.
This'company is the owner of a telephone system connecting the city of Shreveport with its other lines.
This suit was brought to recover the sum of ten thousand dollars. The verdict of the jury allowed the plaintiff seventy-five hundred •dollars.
*2154 Plaintiff complains of the unfitness of the pole from which he fell, and charges the foreman with negligence and carelessness, which resulted in the breaking of the pole and his fall to the ground, the fracture of his arm, bruises and other injuries.
Plaintiff was the lineman of the defendant company, and was at the time of the accident employed in transferring wires from old poles to new ones, and from one side of a street to the other. There were five double .cross-arms on the guy post at or near the top of which the plaintiff was working. He was standing with one foot on the bottom cross-arm, and the other on the second cross-aim. The cross-arms were about eighteen inches apart and were set in the pole. It was a cable pole forty feet out of the ground, and six feet in the ground and measured at the. place at which it broke (not far from the top) nine by ten inches. Plaintiff was hammering the guy wire where it circles the pole to make it fit close and snug. It appears from the evidence that it is not always found necessary to have a man upon the pole to hammer it at the time the wire is being stretched, as was being done at the time of the accident. Erequently staples are used instead of sending up some one on the pole to hammer the wire encircling it. The morning that this pole broke, they had no staples. The pole in question, had been strung, in transferring the wires, as before mentioned, with thirty wires altogether. It was guyed with two guy wires, one in the opposite direction to the other, and both were fastened at or near the top cross arm. The guy wire on which plaintiff was at work was also fastened near the same place on this pole. One of the witnesses said, in answer to the question, “Where were the guy wires fastened at the time you were pulling?” “Close to the top. We had on two wires and were putting on a third when the pole broke.” We are informed that to guy a cable pole, one lineman climbs to where the wire circles the pole and hammers the guy wire in order to make it adhere closely to the pole. The other linemen, at the same time, on the. ground with blocks and tackle, pull the guy wire to make it tight and to give strength and steadiness to the pole. On this oecassion, the poles, instead of being the kind generally used, were of red cedar. This pole had a curve, or crook, in it, and the convex side of the curve was in the direction of the wire the linemen were making tight with block and tackle, as just stated. There' were three linemen working and pulling on the block and tackle for the purpose of putting on the guy wires when the break occurred.
The foreman under whose direction this working party was, was near *2155 by superintending. He was giving tbe signals when to pull and when to stop. He gave tbe signal to stop pulling, and immediately after, the pole suddenly broke. The foreman says: '“Just as soon as I threw up my hands (which is the signal to stop) the pole broke.” The foreman had charge of the construction gang, the men receiving their orders from him. There is a local manager of the company in Shreveport to whom this foreman reports and under whose direction he is. The break was at, or near the lower cross-arm, and by this break,- and as before stated, defendant was thrown to the ground. It appears that- there is a far greater strain on a pole when a double set of blocks is used than when a single set is employed. In the case here, the men, and the block and tackle they were pulling, were one hundred and forty feet (standing on the ground) away from the top of the pole. The power exerted by' the three men pulling- on a double rigged block- at that distance, taking up the slack, is very great.
The following will serve to illustrate the position of the parties at the ■moment of the accident. The wire was fastened near the top of the pole :at “D”, and the block and tackle were attached at point “A”.

*2156 The foreman as a witness, it is true, stated that he had no authority to discharge the men while -they were working within the limits of the city; also, that every night he had a talk with the manager about the work, and if he Was in need of more men he would inform him, and ■would be told by him to employ them.
It appears that'telephone .companies endeavor, as much as possible, to use the larger, stronger, and longer poles for cables, but, in this instance, the pole was not particularly long. The result shows that it was not strong enough to stand the .pressure.
In point of appearance it can scarcely be said to have been up to the standard of cable poles. One of the witnesses testified that it was bent and the other evidence is corroborative of that fact. The serious grounds of complaint are that this pole curved or was crooked nearly its entire lelngth. This, taken with the fact that an attempt was made to strengthen it somewhat and' give it steadiness by pulling it on the convex side of the curve, has much the appearance of imprudence. The power exerted by three men with a double block and tackle would,, ordinarily, be enough, we take it, to break .gven a straight and strong, pole shackled as this was.
In the oral argument at bar, it was said in behalf of the defense, that, it was not possible always to find straight boles of the required length to be used as cable poles. That is, doubtless, quite true. None the less, when it is not possible at the time needed to find such a pole, in applying the guy wires and in attempting to improve or lessen the curve, special care should be -taken not to bring too much power to bear, more especially if, as in this ease, there are no staples on the ground and it become-necessary to send up a lineman to hammer the wire tight and snug,, which encircles the pole, while the men on the ground are pulling to-make the entire wire as taut as possible, and to straighten the pole or bring it in line with other similar poles.
We are constrained by the facts to the conclusion that there was. negligence. Any one, although usually very careful and competent, may, for a moment, become indifferent,' or even negligent in the performance of his work. In this'instance, as is usual with those who have-much to do with work requiring more than usual attention,, there was, at least, a mistake in judgment (which a moment’s thought would have-avoided) in thus bringing so much weight to bear on a pole while someone was near its top carrying out the orders of the foreman. It is incumbent upon the principal to furnish proper material for the work- *2157 In case it be a pole and it be curved, and the desire is to straighten it a little, it becomes important to observe the rules imposed by proper prudence.- As relates to the plea of contributory negligence urged, we found nothing in the evidence to sustain it. He, plaintiff, was executing the work required, as we take it, by the company itself. There was only one way of carrying out the order of the foreman, and that way was being followed by the plaintiff at the time the accident happened. He was not left to select for himself the manner in which the work was to be executed, but was expected to go up the pole and to remain there as long as was necessary while the pole was being guyed.
Now, as to the question of fellow servant, the defendant contends that the foreman was the fellow servant of the plaintiff. The facts are that the foreman employed some men and discharged others, or, at least, they were discharged whenever he found it proper. We do not think, in view of all the facts, that this foreman was plaintiff’s fellow servant. It appears, we think, that the safety of the lineman when he was near the top was not sufficiently consulted by the one who was, as we take it, defendant’s vice-principal in the performance of this work.
The purchase given to a guy wire on a curved pole held in an opposite direction by another guy wire fastened lower on the pole, and the power brought to bear, as made evident by the diagram, were, it is reasonably certain, the cause of the accident for which defendant was held by the judgment of the court a qua, which judgment we think should be affirmed without any special reference to the question of fellow servant.
We will say, none the less, that in our view the foreman was in charge of the gang completely and was not the fellow servant of the workmen over whom he had power, as before mentioned.
Under our law, one is liable not only -for the damage which he occasions, but also for that which is caused by the acts of persons for whom he must answer. C. C. 2317. This, however, is to be understood with the following modification, “and employers are responsiblel for the damage occassioned by their overseers in the exercise of the functions in which they are employed.” It follows that the employer is responsible for the acts of his foreman under the circumstances of this case.
The physicians who attended plaintiff testify that his right arm was stiffened by the injury. That he had a fracture of the elbow joint, the fracture extending into the joint, one of the bones being perfectly dislocated. He also had a fracture of the nasal bone and a few bruises *2158 over the face. The physicians removed part of the nasal bone. He stayed in the hospital one or two days, and then returned to his house, but would return to the hospital for treatment during several weeks.
The physician says, “I can not say positively whether it will remain stiff, but the indications look toward a stiff joint. It will remain probably more or less stiff. He may regain a little more motion, but it looks like it will always be a stiff joint.” The weight of the testimony shows that the injury will be permanent. The arm, however, is not entirely disabled, and the extent of the permanent injury is not proven with any degree of certainty.
It only remains for us to assess the damages. We think that the amount allowed by the verdict was more than it should have been. The amount of twenty-five hundred dollars is the sum we deem proper to fix as sufficient amount for the injury suffered.
It is therefore ordered, adjudged and decreed that the judgment appealed from is amended by reducing the amount allowed from seventy-five hundred dollars to twenty-five hundred dollars, and, as amended, the judgment appealed from is affirmed at appellee’s costs.
Rehearing refused.